**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| PEDRO PAEZ-HERRERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-00078-AGF |
| | ) | |
| GARY STOLZER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Pedro Paez-Herrera filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, which he amended with the assistance of appointed counsel.  Petitioner argues that he has been unlawfully detained at the Ste. Genevieve County Detention Center without a bond hearing in violation of his Fifth Amendment due process rights. He argues that he is entitled to release from detention or, alternatively, a bond hearing to determine whether continued detention is justified.  The Court agrees that Petitioner's continued detention without an individualized bond hearing violates the Due Process Clause.  Therefore, the Court will grant the petition.

## BACKGROUND

Petitioner is a citizen of Columbia who entered the United States on or about September 12, 2022, was encountered by border patrol, and was thereafter processed, fingerprinted, and was granted parole into the United States on his own recognizance. Although the parole stamp of the Department of Homeland Security ("DHS") stated that

parole extended through November 19, 2022 (ECF No. 12-1 at 4), DHS did not detain

Petitioner on that date or for more than three years thereafter.  Instead, DHS continued to

supervise Petitioner in the community through its Immigration and Customs Enforcement

("ICE")  reporting mechanisms, including telephone reporting.  ECF No. 22 at 8.

Since his parole, Petitioner has complied with all requirements of his order of

release, has appeared for all routine check-ins, has not violated any terms of his

supervision, and has had no violations or criminal convictions other than a traffic citation

for operating a vehicle without a license.  Further, since his parole, Petitioner has

obtained an Employment Authorization Document ("EAD") for temporary permission to

work in the United States, a social security number, and a driver's license, and he has

paid taxes.

On February 10, 2026, Petitioner appeared a local ICE office for a scheduled,

routine check-in, and at that check-in, DHS served Petitioner with an administrative

warrant for his arrest and a Notice to Appear ("NTA"), which the Government alleges

automatically terminated his active parole status.  ICE agents took Petitioner into custody

that day.  Petitioner has been detained at the Ste. Genevieve County Detention Center for

more than five months with no bond hearing.

According to the parties (ECF Nos. 22 & 23), Petitioner was placed in removal

proceedings before the Kansas City Immigration Court.  At a master calendar hearing in

the immigration court, Petitioner admitted the factual allegations in the NTA; conceded

inadmissibility under 8 U.S.C. § 1182(a)(6)(A), entry without admission; and declined to

designate a country of removal.  The immigration judge sustained the factual allegations,

sustained the charge of inadmissibility, and designated Colombia as the country of removal.  However, Petitioner also applied for asylum, withholding of removal, and protection under the Convention Against Torture.  On June 22, 2026, the immigration court held a hearing on Petitioner's application for asylum, and on July 1, 2026, the immigration judge issued a written decision denying asylum, withholding of removal, and protection under the Convention Against Torture.

In their filings, the parties acknowledge that Petitioner intended to appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA").  The Court takes judicial notice from publicly available records that Petitioner's appeal was received by the BIA on July 14, 2026, and is currently pending.  *See* Dep't of Justice, EOIR Automated Case Information, *available at* https://acis.eoir.justice.gov/en/ (last accessed July 30, 2026).

The Government contends that Petitioner is being properly detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A), as an unadmitted noncitizen, and that Petitioner's due process claims fail under binding Eighth Circuit and Supreme Court precedent.

**<u>DISCUSSION</u>**

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdiction."  28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  A district

court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[1]

The Court concludes that Petitioner is entitled to relief, in part, based on his claim under the Due Process Clause. To the extent that Petitioner raises claims other than his due process claim, the Court need not reach those alternative claims.

**Finality of Order of Removal and Statutory Authority for Detention**

Because Petitioner has been subject to an order of removal by an immigration judge, which was entered after he filed the instant habeas petition, the Court must consider which statute governs his detention. After an order of removal becomes final, a noncitizen's detention converts to detention under 8 U.S.C. § 1231(a), and any habeas petition challenging detention must address the constitutionality of detention under that statute. *See, e.g.*, *Mukhtarov v. Warden Lasalle ICE Processing Ctr.*, No. 1:25-CV-02127, 2026 WL 1419154, at *1 (W.D. La. May 20, 2026) (describing the change in analysis when a final order of removal has been issued while a habeas petition is pending).

Although Petitioner has been ordered removed by an immigration judge, he has appealed that order of removal to the BIA, and that appeal is still pending. Accordingly, his order of removal has not become final. *See* 8 C.F.R. § 1241.1(a); *see also Hidalgo Nunez v. Bondi*, No. 3:25-CV-01771 SEC P, 2026 WL 1538143, at *3 (W.D. La. June 1,

---

[1]    Although Petitioner concedes that he has not exhausted his administrative remedies, Petitioner contends—and the Government agrees—that exhaustion would be futile here, as ICE field offices in the Eighth Circuit are uniformly denying bond hearings, and the current dispute "presents a purely legal question requiring no further factual or procedural development." *See* Govt. Resp., ECF No. 23 at 5 n.6.

2026) ("And an order of removal becomes administratively final when the BIA dismisses an alien's appeal of that order."). As such, the Court concludes, and the Government does not dispute, that Petitioner is still being detained under § 1225(b)(2)(A), which applies prior to a final order of removal.

For nearly three decades, the prevailing interpretation of § 1225(b)(2)(A) was that unadmitted noncitizens found in the United States were eligible for bond during the pendency of immigration proceedings. Recently, however, DHS has changed course and interpreted this section to permit mandatory, indefinite detention of unadmitted noncitizens already present inside the United States without even the possibility of bond, rendering a bond hearing superfluous. *See Avila v. Bondi*, 170 F.4th 1128, 1136 (8th Cir. 2026).

The Government contends that the Eighth Circuit's decision in *Avila*, which is binding on this Court, forecloses any challenge to the Government's statutory authority to detain Petitioner without a bond hearing.[2] However, even if § 1225(b)(2)(A) applies to

---

[2]    While the Court is bound by the Eighth Circuit's ruling, the Court notes that the legal issue addressed in *Avila* is not settled, and at least four other circuits have disagreed with the Eighth Circuit's holding. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (holding that § 1226(a)'s permissive detention scheme, rather than § 1225(b)(2)(A)'s mandatory detention scheme, governs the detention of noncitizens "who are already present in the United States and are determined not to be a flight risk or danger to the community . . . while their removal proceedings are pending."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026) (same); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026) (same); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709, at *16 (10th Cir. June 30, 2026) (same)*; see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026); *but see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (adopting the same position as the Eighth Circuit in *Avila*).

Petitioner and provides no statutory right to a bond hearing, *Avila* does not foreclose Petitioner from challenging his detention on due process grounds. *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). And the Court agrees that Petitioner's detention without a bond hearing violates the Due Process Clause.

**Due Process**

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). As the Government concedes, the Fifth Amendment applies equally to citizens and noncitizens who have "enter[ed] the country." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "'whether their presence here is lawful, unlawful, temporary, or permanent.'"[3] *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (quoting *Zadvydas v. Davis*, 533 U.S. at 693).

---

[3]    Importantly, the habeas petition here seeks only release from detention or, alternatively, a bond hearing to determine whether continued detention is justified. Petitioner does not challenge his removability, thus distinguishing this case from *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), in which the Supreme Court rejected a habeas petition challenging an order for expedited removal. In *Thuraissigiam*, the Supreme Court held that noncitizens "at the threshold of initial entry"— or, as in the case of the *Thuraissigiam* petitioner, stopped just 25 yards after crossing the border—have "only those rights regarding admission that Congress has provided by statute." 591 U.S. at 107, 140. But the due process right discussed by the Supreme Court in *Thuraissigiam* was the right of a noncitizen at the border (or immediately after border crossing) to judicial review regarding the merits of his asylum application. *Id.* at 138-39; *see also id.* at 117-18 ("In this case, however, respondent did not ask to be released. Instead, he sought entirely different relief: vacatur of his removal order and an order directing the Department to provide him with a new opportunity to apply for asylum and other relief

"[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore v. Kim*, 538 U.S. 510, 528 (2003). The Government enjoys more flexibility when dealing with noncitizens and "may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. Detention during removal proceedings may be a constitutionally permissible part of the deportation process. *Demore*, 538 U.S. at 531.

However, "the government's ability to detain noncitizens is not limitless." *Lopez-Campos*, 175 F.4th at 732. Rather, Supreme Court precedent counsels that detention should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Santillan Quiroz*, 2026 WL 1876709, at *16 ("If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a strong special justification."). "Where immigration detention becomes needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing to justify a noncitizen's continued detention." *Lopez-Campos*, 175 F.4th at 732–33 (collecting cases).

---

from removal.") (cleaned up). *Thuraissigiam* simply does not apply to a noncitizen like Petitioner who was detained after residing within the United States for years and who is only challenging his detention.

These principles establish the uncontroversial proposition that due process applies to detained noncitizens; they do not determine what qualifies as "constitutionally adequate procedures." *Loudermill*, 470 U.S. at 541.  Typically, that question is answered by balancing three factors: (i) the private interest that will be affected by the official action; (ii) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Government rejects any application of the *Mathews* factors to Petitioner's habeas petition.  Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), and *Demore*, 538 U.S. 510, the Government claims that Petitioner cannot challenge his detention pending removal, only the removal itself.  The Court disagrees.

As the undersigned has previously held in *Mekonnen v. Stolzer*, No. 1:26-CV-00122-AGF, 2026 WL 2029972 (E.D. Mo. July 14, 2026), *Banyee* and *Demore* are distinguishable from the case at bar.  *See also Jesus Alejandro G.A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138 at *6-8 (D. Minn. May 18, 2026).  Neither *Banyee* nor *Demore* involved the detention of unadmitted noncitizens under § 1225(b)(2)(A).

*Banyee* dealt with the detention of a former lawful permanent resident convicted of multiple crimes.  *Banyee*, 115 F.4th at 930.  Banyee's last conviction for robbery with a dangerous weapon prompted federal authorities to begin deportation proceedings.  *Id.*

-8-

Because of his criminal convictions, Banyee was detained under § 1226(c)(1)(B) which required the Attorney General to detain "any alien who… is deportable by reason of having committed any offense covered in 1227(a)(2)(A)(ii), (A)(iii), or (B)." *Id.* Banyee challenged his year-long detention pending removal on due process grounds. While recognizing that "deciding what process is due ordinarily requires a form of interest balancing" *id.* at 933 (citing *Mathews v. Eldridge*), the Eighth Circuit ultimately rejected Banyee's due process argument without any analysis of the *Mathews* factors.

In reaching this conclusion, the Eighth Circuit relied heavily on the Supreme Court's decision in *Demore*. Like *Banyee*, *Demore* involved a lawful permanent resident who was detained pursuant to § 1226(c) after multiple criminal convictions. As the Supreme Court noted, the detention at issue occurred "following the full procedural protections our criminal justice system offers." *Demore* 538 U.S. at 513. The Supreme Court further noted that congressional evidence established that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and "that one major cause of the [Immigration and Naturalization Service's] failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceeding." *Id.* at 518-19. In light of these findings, the Supreme Court held that detention without an individualized bond hearing under § 1226(c) did not violate a detainee's due process rights.

Critical to the Supreme Court's holding in *Demore* was Congress's "justifiabl[e] concern[] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Id*. at 513. In

-9-

other words, detention was constitutionally permissible in *Demore* because it served the purpose of preventing criminal noncitizens from fleeing prior to removal and increased the chance that removal could be successfully accomplished.  Further, any due process concerns were mitigated because the noncitizens at issue "became deportable under § 1226(c) only following criminal convictions that were secured following full procedural protections" that "reflect[ed] personal activity that Congress considered relevant to future dangerousness."  *Id.* at 525 n.9.[4]

Given similarities between *Demore* and *Banyee*, the Eighth Circuit in *Banyee* determined that it need not independently apply *Mathews* because *Demore*  had "already done whatever balancing [was] necessary."  *Banyee* 115 F.4th at 933.  Both cases dealt with the same private interest: the right of a noncitizen to be free from detention pending deportation after criminal conviction.  Both cases dealt with the same governmental interest: ensuring criminal noncitizens—which Congress found, based on express evidence, were particularly unlikely to reappear—would be present for their deportation proceedings.  And both cases presented the same risk of erroneous deprivation, which

---

[4]      Likewise, the older precedent on which *Banyee* and *Demore* relied, including *Carlson v. Landon,* 342 U.S. 524 (1952) (detention of noncitizens participating in Communist activities)  and *Reno v. Flores,* 507 U.S. 292 (1993) (detention of noncitizen juveniles who could not be released to parents, legal guardians, or certain other adult relatives), found detention without bond constitutional in part because of express legislative or administrative findings at the respective time periods regarding "the evils of Communist activity" rendering such noncitizens "a menace to the public interest," *Carlson*, 342 U.S. at 541-43, and the uniquely "difficult problems presented [with] arrests [of] unaccompanied alien juveniles," *Reno*, 507 U.S. at 315.  "In both cases, the Government provided some justification for detention, albeit on a categorical or class-wide basis. No such class-wide findings exist here that would justify mandatory detention of every single unadmitted noncitizen." *Santillan Quiroz*, 2026 WL 1876709, at *17.

was mitigated by a criminal conviction reflecting personal activity that Congress considered categorically relevant to future dangerousness. Because the interests and risks in *Banyee* were identical to those in *Demore*, so too was the balance, and therefore the result.

Nearly every factor that led the courts to uphold the detentions in *Demore* and *Banyee* differs from the current case. Those detained pursuant to § 1225(b)(2)(A) need not have any criminal conviction or have done anything at all that may bear on their dangerousness or the assessment of whether they are a flight risk. The only determination required to detain a noncitizen pursuant to § 1225(b)(2)(A) is that they are an "applicant for admission" who is not "clearly and beyond a doubt entitled to be admitted." In other words, detention is not limited to "a small segment of particularly dangerous individuals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, *including tourist visa violations*." *Zadvydas*, 533 U.S. at 691 (emphasis in original).

This is not to say that detention pursuant to § 1225(b)(2)(A) is always impermissible. It only highlights the difference in the liberty interest of a noncitizen convicted of serious crimes versus one who has no criminal record, and the subsequent difference in the Government's interest in detaining a noncitizen with characteristics that Congress has categorically associated with a higher risk of danger or flight risk versus its interest in detaining all noncitizens solely on the basis that they are removeable, which "bears no relation" to their dangerousness. *Zadvydas*, 533 U.S. at 691-92.

-11-

In light of these differences, the Court concludes that neither *Demore* nor *Banyee* have "already done whatever balancing is necessary" for the particular type of detention at issue here.[5]  Thus, the Court turns to the balancing test "ordinarily" required to determine what process is due, *see Banyee*, 115 F.4th at 933, and considers the factors set forth in *Mathews v. Eldridge*, 424 U.S. at 335:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

### i.      Private Interest

The private interest Petitioner claims in this habeas petition is a liberty interest to be free from detention, which is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Besides that general interest, Petitioner's prior release on parole to live productive life in community and his compliance with all conditions of that release create an interest in that continued liberty, at least without arbitrary revocation.

 "Courts have recognized the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their continued liberty." *Rios Moreno v. Blanche*, No. 26-CV-2283

---

[5]      The undersigned recognizes that other judges in this District have come to a different conclusion, *e.g.*, *Lugo-Solet v. Mullin*, No. 1:26-CV-52-ZMB, 2026 WL 1162233, at *2 (E.D. Mo. Apr. 29, 2026), and respectfully disagrees with those conclusions.

(LMP/DLM), 2026 WL 1506306, at *8 (D. Minn. May 29, 2026) (collecting cases); *see also Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) ("Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2023.  The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk.").  "It is from this liberty interest that detention without an individualized bond hearing can become constitutionally impermissible, even if the detention has a theoretical end point." *Lopez-Campos* , 175 F.4th at 734.

This Court recognizes that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522.  However, the recognition that Congress has more leeway to restrain the liberty interest of noncitizens than citizens does not extinguish a noncitizen's liberty interest in being free from imprisonment; such a holding would conflict with almost all Supreme Court precedent to consider this matter.  Nor does the Government's flexibility mean that the liberty interest of citizens cannot inform Court's opinion on what process is due.  *See Zadvydas*, 533 U.S. at 690 (applying principles relating to a citizen's liberty interest in being free from imprisonment and the associated due process concerns to noncitizens).

Relatedly, the liberty interest to be free from detention of a noncitizen who has engaged in criminal activity is different than one who has not.  The Government argues that so long as detention is related to an ongoing removal proceeding, the individual liberty interest is the same between noncitizens subject to removal because of their serious criminal convictions and those subject to removal solely because they were not

-13-

lawfully admitted.  This Court disagrees.  It is well established that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."  *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009).  And our nation has a long history of depriving those who have had the full protection of the criminal justice system due process rights in administrative proceedings which others are entitled to.  *See, e.g.*, *Hawker v. People of New York*, 170 U.S. 189, 196 (1898) (denying a doctor the right to contest the revocation of his medical license after a felony conviction because "the state is not seeking to further punish a criminal, but only to protect its citizens . . . .").  Unsurprisingly, when the Court upheld the detention in *Demore*, it went out of its way to repeatedly highlight that the detainee in that case was subject to mandatory detention only after the full protection of the criminal justice process.  Petitioner here has no criminal convictions.  He has had no formal—or even informal—adjudication to suggest he is a flight risk or dangerous.  Therefore, Petitioner's "most elemental liberty interest" is not diminished like the detainees in *Demore* and *Banyee*.

### ii.    Risk of Erroneous Deprivation

As noted above, Supreme Court precedent convinces this Court that the Government's ability to detain noncitizens during removal proceedings is not limitless and should be tied to a regulatory goal of either (1) ensuring appearance at a future immigration proceeding or (2) preventing danger to the community.  *Zadvydas*, 533 U.S. at 690; *see also Lopez-Campos*, 175 F.4th at 732; *Santillan Quiroz*, 2026 WL 1876709 at *16.  Here, there is a significant risk that Petitioner has been and will be erroneously

-14-

deprived of his interest in remaining free from unnecessary detention.  Petitioner was given no opportunity to argue he was not a flight risk or dangerous.  There have been no specific congressional findings pertaining to unadmitted noncitizens writ large similar in kind to the findings regarding criminal noncitizens in *Demore.*

Petitioner has already been detained for more than five months, and the parties do not indicate how long his appeal before the BIA will be pending.  However, even if removal is reasonably foreseeable at some unknown future date, the Supreme Court has cautioned that habeas courts should still "consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Zadvydas*, 533 U.S. at 700.

The Government has not pointed to any risk of Petitioner committing any crime, presenting any other danger to society, or otherwise attempting to evade removal. Indeed, the Government has previously released Petitioner on parole, leaving Petitioner to establish a life, employment, and community ties in this country.  Nor has the Government suggested any change in circumstances prior to Petitioner's current detention.  In any event, an individualized bond hearing would ensure that detention is necessary to serve one or both of the regulatory goals sought to be served.

### iii.    Government's Interest and Burden of Additional Procedure

Although the Government certainly has an interest in ensuring the appearance of noncitizens at their immigration hearings and protecting the public from danger, it has not disputed that those interests would be adequately served by an individual bond hearing to assess whether Petitioner is a flight risk or dangerous.  Nor has the Government offered

any argument or evidence that providing an individual hearing would impose a significant burden, certainly not one that outweighs Petitioner's liberty interest. *See, e.g.*, *Lopez-Campos*, 175 F.4th at 735 (holding that due process requires that noncitizens like Petitioner who are "long-term law-abiding residents in the United States" should "have a forum to explain that their backgrounds and connections to their communities justify release on bond while they undergo their removal proceedings"); *Barbosa da Cunha*, 175 F.4th at 95 (holding that "mandatory detention of noncitizens . . . who cannot be said, as a categorical matter, to pose a danger to the community or risk of flight[] for a substantial period of time would raise serious constitutional questions [where] the government has failed to explain how it would bear a reasonable relation to any legitimate, non-punitive purpose"); *Patel v. Arnott*, No. 6:26-CV-3207-MDH, 2026 WL 1091195, at *4 (W.D. Mo. Apr. 22, 2026) ("A bond hearing would not undermine immigration enforcement; it would ensure that detention is exercised lawfully and in accordance with the Constitution.  Here, the Government's interest in detaining Petitioner without Due Process is minimal.").

In short, the Court holds that Petitioner's continued detention under § 1225(b)(2)(A) without a bond hearing violates the Due Process Clause, particularly given Petitioner's prior parole, full compliance with conditions of parole, and the length of time he has already been detained.  Therefore, the Court will grant the petition insofar as it seeks a prompt, individual bond hearing.  In light of this relief, the Court need not address Petitioner's other claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Pedro Paez-Herrera's petition for a

writ of habeas corpus under 28 U.S.C. § 2241 is **GRANTED in part, as follows:**

1.  By no later than **ten (10)** days from the date of this Order, the Government must provide Petitioner Pedro Paez-Herrera an individualized bond hearing before an immigration judge.

2.  If the Government does not provide Petitioner Pedro Paez-Herrera with a bond hearing in accordance with this Order, the Government must immediately release Petitioner Pedro Paez-Herrera from detention; and

3.  By no later than **5:00 p.m. on August 12, 2026**, the Government must provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Petitioner Pedro Paez-Herrera's release from detention.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 30th day of July, 2026.